\*\*\*  FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER  \*\*\*

**Electronically Filed
Supreme Court
SCWC-13-0005700
18-JUN-2015
09:05 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

JOHN DOE, Petitioner/Appellant-Appellant,

vs.

ATTORNEY GENERAL, Respondent/Appellee-Appellee.
_____

SCWC-13-0005700
APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIV. NO. 13-1-1331)

JUNE 18, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.,

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

Pro se Petitioner/Appellant-Appellant John Doe ("Doe") timely applied for writ of certiorari ("Application") on March 30, 2015 from a March 25, 2015 Judgment entered by the Intermediate Court of Appeals ("ICA") pursuant to its February

23, 2015 Summary Disposition Order ("SDO").  The ICA affirmed the Circuit Court of the First Circuit's ("circuit court['s]") dismissal of Doe's agency appeal based on a lack of jurisdiction, holding that the circuit court's decision was not clearly erroneous.

At issue in Doe's Application is whether communication between Respondent/Appellee-Appellee Attorney General and Doe consists of an administrative decision in response to a petition, and whether that decision is appealable to the circuit court.

## II.  Background

### A.  Factual Background

As a result of pleading guilty in 2011 to two counts of a gross misdemeanor under Washington law, "Communication with minor for immoral purposes," Wash. Rev. Code Ann. § 9.68A.090 (West 2010),[1] Doe has been a registered sex offender in Washington, and must continue to be registered until 2021.  See Wash. Rev. Code Ann. § 9A.44.140(3) (West 2009, Supp. 2015).  A gross misdemeanor is a serious misdemeanor though not a felony. Black's Law Dictionary 1150 (10th ed. 2014).  As he hoped to

---

[1]    Doe stated the following facts in his plea agreement: "During the period between October 1, 2009 and October 31, 2009, on two separate occasions, I communicated with [omitted initials and birthdate of minor], a person under 18 years of age, for an immoral purpose of a sexual nature.  This occurred in King County Washington."

vacation in Hawaiʻi with his family, on May 23, 2012, Doe sent an e-mail to the Hawaiʻi Criminal Justice Data Center ("HCJDC"), inquiring as to (1) Hawaii's registration requirements, and (2) whether and how he could petition the attorney general for an exemption from those requirements.  HCJDC is "an agency of the Department of the Attorney General in the State of Hawaiʻi," which "administers the State's sex offender registration system."  Hawaiʻi Criminal Justice Data Center, Hawaii.gov, http://www.ag.hawaii.gov/hcjdc (last visited June 16, 2015); Department of the Attorney General, Hawaii.gov, http://ag.hawaii.gov/about-us/overview/ (last visited June 16, 2015).

On June 4, 2012, HCJDC replied to Doe's e-mail, generally paraphrasing registration requirements under the Hawaiʻi Revised Statutes ("HRS") — that all sex offenders convicted of "covered offenses" pursuant to HRS § 846E-1 (Supp. 2012), "who remain, or expect to remain, in Hawaii for more than ten days, or for an aggregate period exceeding thirty days in one calendar year" shall register.[2]  HCJDC added that certain

---

[2]     HCJDC did not cite to the HRS when relaying this "duration condition" to Doe.  Indeed, it could not, as the statutory provision reflecting this condition was not enacted until April 30, 2013.  See 2013 Haw. Sess. Laws Act 64, § 5 at 116 (amending HRS § 846E-2(a) by adding: "Registration under this subsection is required whenever the covered offender, whether or not a resident of this State, remains in this State for more than ten days or for an aggregate period exceeding thirty days in one calendar year.") ("duration condition").

(continued . . .)

3

covered offenders who "establish[] or maintain[] a residence in Hawaii . . . may petition the State Attorney General for termination of registration requirements," but that "[c]urrently, there is no form available."

Approximately ten months after HCJDC e-mailed its reply, Doe wrote to then Attorney General David Louie ("Attorney General") by letter dated March 24, 2013.  Doe stated that his purpose was to "petition termination of sex offender registration requirements per Hawaii statute Section 846E-2(b)"[3] as he was "[p]resently . . . not a resident of Hawaii, . . . but

_____

(. . . continued)
The only statutory minimum duration period as of June 2012 was contained in HRS § 846E-2(g) (Supp. 2012), which concerns registration with the chief of police, and not registration with the attorney general.  See HRS § 846E-2(g) (Supp. 2012) ("In addition to the requirement under subsection (a) to register with the attorney general . . . each covered offender shall also register in person with the chief of police where the covered offender resides or is present. . . .  Registration under this subsection is required whenever the covered offender, whether or not a resident of this State, remains in this State for more than ten days or for an aggregate period exceeding thirty days in one calendar year." (emphasis added)).

[3]     A person who establishes or maintains a residence in this State and who has not been designated as a covered offender by a court of this State but who has been designated as a covered offender . . . or any other sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration or community or public notification, . . . without regard to whether the person otherwise meets the criteria for registration as a covered offender, shall register in the manner provided in this section . . . .  A person who meets the criteria of this subsection is subject to the requirements and penalty provisions of section 846E-9 until the person successfully petitions the attorney general for termination of registration requirements . . . .

HRS § 846E-2(b) (2014).

4

[he and his family[4]] [we]re making plans for an extended visit to the islands and likely to exceed the 10 day grace period . . . ."  With his letter, Doe included several State of Washington court documents related to his conviction.

Doe argued that he should be relieved from sex offender registration requirements because "Hawaii has no comparable criminal sex offense to [his] misdemeanor violation . . . , and neither the elements of the conviction nor the conduct pled to is comparable to a Hawaii criminal sex offense."  Doe sought a "formal determination on this matter," and provided notice that "if unsatisfied with [the Attorney General's] determination, [he] may appeal [the] decision pursuant to Chapter 91."

HCJDC replied to Doe on behalf of the Attorney General by letter dated April 10, 2013:

> In regards to whether your Washington State conviction of Communication with a Minor for Immoral Purposes is a covered offense requiring registration in Hawaii, Chapter 846E-2, Hawaii Revised Statutes (HRS) requires you to register in this state before any determination can be made. . . .
>
> As such, you will be required to register in Hawaii should you remain in this state for more than ten days or for an aggregate period exceeding thirty days in one calendar year.  You must register . . . no later than three working days after your arrival in this state. . . .

On May 6, 2013, Doe filed a "Notice of Appeal to the Circuit Court" ("Notice"), with respect to "the decision of

_____

[4]     Doe uses the pronoun, "we," in his letter, but does not define it.  That it appears he refers to he and his family is based on his e-mail.

5

Attorney General written on April 10, 2013, denying request for declaratory review whether a foreign conviction in violation of Washington State RCW 9.68A.090 was a 'covered offense' per 845E-1." In the Notice, Doe cited to "Chapter 846ER-2(b) [sic], Chapter 91-8 and Chapter 91.14 [sic], Hawaiʻi Revised Statutes,[5] and Rule 72 of the Hawaiʻi Rules of Civil Procedure" in support.

Upon receiving the Notice, HCJDC issued a letter dated May 16, 2013, the purpose of which was to "modify" its letter dated April 10, 2013. In the May 16 letter, HCJDC (1) characterized Doe's letter to the Attorney General as seeking "termination of sex offender registration requirements pursuant to Hawaii Revised Statutes (HRS) section 846E-2(b)," (2) quoted HRS § 846E-2(b), and (3) concluded:

> [B]ecause you were convicted and required to register in the State of Washington, under the above-referenced

[5]     Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

HRS § 91-8 (2012).

Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof . . . .

HRS § 91-14(a) (2012).

statute, if you reside in Hawaii for more than ten days or for an aggregate period exceeding thirty days in one calendar year, you are required to register. Registration is a prerequisite to your filing of a petition for termination of registration requirement [sic].

(footnote omitted).

## B.    Circuit Court Proceedings

The parties filed briefs on the appeal, which were received and considered by the circuit court.[6]  Oral argument was held on September 13, 2013.  Doe appeared pro se.

Although Doe broadly stated in his opening brief that "[t]he purpose for the petition is to provide the Appellant with assurance of his legal standing and allow for planning regarding work, travel, and residency," and more generally argued that he "should not be required to register as a sex offender while present in Hawaii," at no time during the argument at circuit court was there a change to Doe's intended travels to Hawaiʻi. Doe never stated that he would be residing in Hawaiʻi.  Instead, as previously noted, Doe's May 23, 2012 e-mail indicated he "would like to continue vacationing periodically in Hawaii," and his subsequent March 24, 2013 letter to the Attorney General noted he was "making plans for an extended visit to the islands."  Nevertheless, at circuit court, the parties focused

---

[6]     Although Doe's Reply Brief was untimely filed on August 26, 2013, given that no objections were made by the Attorney General, the circuit court ruled at oral argument that it would "receive [the Reply Brief] and . . . consider [it]."

7

their arguments on HRS § 846E-2(b), which applies only to those offenders who "establish[] or maintain[] a residence in this State."  HRS § 846E-2(b).  The circuit court also concentrated on subsection (b) when clarifying the law and Doe's position:

> Now, when I read the registration requirement, specifically HRS 846E-2, that pertains to registration requirements, it speaks to that a person shall register without regard to whether the person otherwise meets the criteria for registration as a covered offender.  So what I'm hearing from you [Doe] is that there is a dispute on your part as to whether or not it would be a covered -- whether or not you are a covered offender, No. 1, on the merits of the case.  But without going into the merits as to whether or not it pertains to you, nevertheless shall register in the manner provided in this section until the person successfully petitions the attorney general for termination.
>
> So we're looking at a particular process.  It sounds as if you have to first register and then petition for termination and then the -- there's a determination as to whether or not it should be terminated in terms of looking -- hearing the merits of your argument.

The circuit court concluded that because Doe did not follow the designated process, his communications with HCJDC "d[id] not . . . present a contested proceeding" that was appealable under HRS § 91-14.  On this basis, the circuit court dismissed the case for lack of subject matter jurisdiction under HRS Chapter 91.

## C.    Appeal to the ICA

On appeal to the ICA, Doe asserted:

> Appellant researched the registration requirements in Hawaii and believes he does not meet the requirements as a "covered offender" and therefore should not be subjected to the registration requirements if he travels to Hawaii for business or personal reasons, and requested such a determination by the Attorney General in a letter.

Doe asserted the following points of error on appeal:

8

> 1) that the communication between the Appellant and Attorney General did not constitute a contested case, and
>
> 2) that Appellant is first required to register as a sexual offender before he was authorized to petition the Attorney General as he did.

In response, the Attorney General argued the circuit court appropriately dismissed Doe's Notice because (1) the written communications between Doe and HCJDC did not constitute a contested case, (2) Doe's letter was not a petition for termination, and (3) the letter did not amount to a petition for a declaratory ruling pursuant to HRS § 91-8 as Doe did not cite to that statute, but instead cited only to HRS § 846E-2(b).  The Attorney General went on to add:

> To be sure, the Attorney General lacks the statutory authority to deem someone "not a covered offender" <u>prior to registration</u> as [Doe] requests. . . .
>
> . . . .
>
> [Nevertheless], it reasonably appears that [Doe]'s [Washington state] conviction for violating RCW § 9.68A.090 would constitute a "sexual offense" under HRS § 846E-1 . . . .  However, as [Doe] has not yet registered here and verified his identity, [HCJDC] has yet to make that determination.

(emphasis in original).

The ICA concluded that "[Doe]'s correspondence with [HCJDC] did not constitute an appealable contested case hearing" because (1) HCJDC's correspondence with Doe was "not required by law," and (2) "[HCJDC]'s responses were merely recitations of what registration procedures would apply, if [Doe] were to visit Hawaiʻi."  Accordingly, the ICA affirmed the circuit court's:

9

"(1) 'Notice of Entry of Final Judgement,' filed October 17, 2013; (2) 'Final Judgment,' filed October 17, 2013; and (3) 'Order Dismissing Notice of Appeal to Circuit Court, Filed May 6, 2013,' filed October 17, 2013."

## III. Standards of Review

### A. Jurisdiction

"[T]he existence of jurisdiction is a question of law that [is] review[ed] de novo under the right/wrong standard." Captain Andy's Sailing, Inc. v. Dep't of Land & Natural Res., 113 Hawaiʻi 184, 192, 150 P.3d 833, 841 (2006) (internal quotation marks, brackets, and citation omitted).

### B. Interpretation of a Statute

"'The interpretation of a statute is a question of law reviewable de novo.'" Ka Paʻakai O Kaʻaina v. Land Use Comm'n, 94 Hawaiʻi 31, 41, 7 P.3d 1068, 1078 (2000) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 160, 977 P.2d 160, 168 (1999)).

## IV. Discussion

### A. Overview of Hawaii's Sex Offender Registration Scheme

Persons who commit sexual offenses out-of-state and are subject to the registration requirements of the jurisdiction in which those crimes were committed ("out-of-state offenders"), who also wish to be present in Hawaiʻi, fall into one of three categories: (1) those who remain in Hawaiʻi for no more than ten

days or for no more than an aggregate period of thirty days in one calendar year ("Group 1"); (2) those who remain in Hawaiʻi for more than ten days or for an aggregate period exceeding thirty days in one calendar year ("Group 2");[7] and (3) those who establish or maintain a residence in Hawaiʻi ("Group 3").  These categories are based on the following statutes:

> A covered offender shall register with the attorney general and comply with the provisions of this chapter for life or for a shorter period of time as provided in this chapter. Registration under this subsection is required whenever the covered offender, whether or not a resident of this State, remains in this State for more than ten days or for an aggregate period exceeding thirty days in one calendar year.  A covered offender shall be eligible to petition the court in a civil proceeding for an order that the covered offender's registration requirements under this chapter be terminated, as provided in section 846E-10.

HRS § 846E-2(a) (2014);

> A person who establishes or maintains a residence in this State and who has not been designated as a covered offender by a court of this State but who has been designated as a covered offender . . . or any other sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration or community or public notification . . . , without regard to whether the person otherwise meets the criteria for registration as a covered offender, shall register in the manner provided in this section . . . .  A person who meets the criteria of this subsection is subject to the requirements and penalty provisions of section 846E-9 until the person successfully petitions the attorney general for termination of registration requirements . . . .

HRS § 846E-2(b) (2014).

---

[7]     Because the parties do not take issue with the duration condition (whether as codified in 2014 or as expressed in HCJDC's June 4, 2012 e-mail, see supra note 2) or other 2013 amendments to HRS Chapter 846E-2, we examine Hawaii's sex offender registration requirements as they were codified in 2014 unless otherwise noted.

The critical difference between these two subsections is that subsection (b) applies only to Group 3 offenders, i.e., "person[s]" who are out-of-state offenders who "establish[] or maintain[] a residence in [Hawaiʻi]." HRS § 846E-2(b). HRS Chapter 846E does not define "residence" nor does it refer to a statutory definition provided elsewhere in the HRS. The 2013 amendments, however, define "permanent residence" and "temporary residence."

> "Permanent residence" means a building, permanent structure or unit therein, or watercraft where the covered offender resides and intends to reside indefinitely, or at least for the next one hundred eighty days, and which the offender owns, rents, or occupies with the consent of the owner.
>
> . . . .
>
> "Temporary residence" means a building, permanent structure or unit therein, watercraft, emergency shelter, or transitional housing facility where the covered offender resides, but does not intend to reside for more than one hundred eighty days."

HRS § 846E-1 (2014).

The portions of these definitions that concern "residence" turn on "where the covered offender resides." Id. (emphasis added). "Reside" is defined as: "[t]o dwell permanently or continuously; to have a settled abode for a time; to have one's residence or domicile; specif., to be in residence, as the incumbent of a benefice." Webster's New Int'l Dictionary 2119 (2d ed. 1960). Taking these definitions into consideration, "residence," in the context of HRS § 846E-2(b),

12

reasonably means "a building, permanent structure or unit therein, or watercraft where the covered offender settles to dwell permanently or continuously."

Notably, the foregoing is consistent with the definition of "residence" provided in HRS § 11-13 (2009), which is used for election purposes only: "The residence of a person is that place in which the person's habitation is fixed, and to which, whenever the person is absent, the person has the intention to return[.]" HRS § 11-13(1).

Registration requirements for out-of-state offenders in Groups 1 and 3 are straightforward. Those in Group 1 are not subject to Hawaii's registration requirements, as they do not remain in Hawaiʻi long enough to trigger registration. See HRS § 846E-2(a). Those in Group 3 are plainly subject to Hawaii's registration requirements as they are "person[s]" who meet the residency criterion: "A person who establishes or maintains a residence in this State . . . who has been designated as a covered offender, sex offender, . . . or any other sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration . . . , without regard to whether the person otherwise meets the criteria for registration as a covered offender, shall register

13

in the manner provided in this section . . . ."  HRS § 846E-2(b)

(emphasis added).[8]

Whether an out-of-state offender in Group 2 — to which

Doe ostensibly belongs[9] — must register is solely dependent on

whether the out-of-state offense committed is considered a

"covered offense" under Hawaiʻi law.  This is because

registration under subsection (a) is only required of "covered

offender[s]."  HRS § 846E-2(a) ("A covered offender shall

register with the attorney general and comply with the

provisions of this chapter . . . .") (emphasis added).  This

contrasts with subsection (b)'s reference to "person[s]."  HRS §

846E-2(b).  A "covered offender" includes a person who has been

convicted of a "sexual offense" or a "crime against minors."

HRS § 846E-1.  A "sexual offense" includes any out-of-state

offense "that under the laws of [Hawaiʻi] would be a sexual

offense as defined in [HRS § 846E-1, paragraphs (1)-(6), under

the definition of 'sexual offense']."  Id.  A "crime against

minors" includes any out-of-state offense "that, under the laws

of [Hawaiʻi], would be a crime against minors as designated in

_____

[8]    As the record does not show Doe has established or maintained a residence in Hawaiʻi, and as discussed infra Parts IV.B.–G., the statutory subsection applicable to Doe is HRS § 846E-2(a).  Accordingly, although there may be potential issues posed by the register-first-then-petition scheme set forth in HRS § 846E-2(b), this opinion does not address them.

[9]    See infra Part IV.C.

14

[HRS § 846E-1, paragraphs (1)-(4), under the definition of 'crime against minors']." Id.

If the offense is not a "covered offense," then the out-of-state offender does not fall under Hawaii's sex offender registration scheme, and therefore the out-of-state offender need not register. However, if the out-of-state offense is a "covered offense," the out-of-state offender must register. See HRS § 846E-2(a). This inquiry is not an easy one, as acknowledged by the Attorney General in 2013. See David M. Louie & Lance M. Goto, Testimony of the Dep't of the Attorney Gen. Twenty-seventh Legislature, 2013, 2-3 (Jan. 29, 2013), http://www.capitol.hawaii.gov/Session2013/Testimony/SB1016_TESTI MONY_JDL_01-29-13.pdf ("AG Testimony") ("In evaluating offenders with convictions from other jurisdictions, it sometimes is very difficult to determine whether or not, and how, Hawaii registration requirements apply. Some offenses from other jurisdictions are very different from Hawaii law.").

**B.  Terminating Registration Requirements under HRS § 846E-2(b) for a Group 3 Offender Differs from Determining Whether a Group 2 Offender's Out-of-State Offense Is a "Covered Offense"**

Although a Group 3 offender who establishes or maintains a residence in Hawaiʻi must register "without regard to whether the person otherwise meets the criteria for registration as a covered offender," he or she may "petition[] the attorney

15

general"[10] to terminate his or her registration requirements by showing that he or she "does not meet the criteria for registration as a covered offender under the laws of [Hawaiʻi]," i.e., that the out-of-state offense committed is not a "covered offense" under Hawaiʻi law.  HRS § 846E-2(b) (emphasis added).[11] In this context, the root legal issue regarding whether registration requirements for a Group 3 offender should be

---

[10]     "'Attorney general' means the attorney general of the State of Hawaii, the department of the attorney general, or an authorized representative of the attorney general."  HRS § 846E-1.

[11]     HRS 846E-2(b) states in relevant part:

> A person who meets the criteria of this subsection [HRS 846E-2(b)] is subject to the requirements and penalty provisions of section 846E-9 until the person successfully petitions the attorney general for termination of registration requirements by:
>
>      (1) Providing an order issued by the court that designated the person as a covered offender, sex offender, offender against minors, repeat covered offender, sexually violent predator, or any other sexual offender designation in the state or jurisdiction in which the order was issued, which states that such designation has been removed or demonstrates to the attorney general that such designation, if not imposed by a court, has been removed by operation of law or court order in the state or jurisdiction in which the designation was made, and such person does not meet the criteria for registration as a covered offender under the laws of this State; or
>
>      (2)  Demonstrating that the out-of-state convictions upon which the sexual offender designation was established are not covered offenses under section 846E-1, thereby showing that such person does not meet the criteria for registration as a covered offender under the laws of this State.

HRS § 846E-2(b) (emphasis added).  Accordingly, termination pursuant to either of these two bases rests on whether the out-of-state offender "does not meet the criteria for registration as a covered offender under the laws of this State."

16

terminated is very similar, if not identical, to that regarding whether Hawaii's registration scheme applies to a Group 2 offender: is the out-of-state offense a "covered offense" under Hawaiʻi law?

Despite this overlap of the underlying legal questions facing offenders in Groups 2 and 3, when that question arises for each Group differs. Group 2 faces the question before any registration is required, as the inquiry's purpose is to determine whether the statutory scheme even applies. On the other hand, because Hawaii's registration requirements immediately apply to Group 3 by the plain language of HRS § 846E-2(b), offenders in this Group face the question only upon their request for termination of requirements, which occurs after mandatory registration.

How the question is raised by an out-of-state offender before an appropriate authority also differs based on whether the offender belongs to Group 2 or Group 3. Pursuant to the plain language of the statute, a Group 3 out-of-state offender would pose the question to the attorney general for termination of registration requirements. See supra note 11 (quoting HRS § 846E-2(b)). An appeal of the attorney general's decision can be made pursuant to HRS Chapter 91, Hawaii's Administrative Procedure Act. See HRS § 846E-2(b).

17

The statute is not as clear with respect to how the question can be raised by a Group 2 offender.  Nothing in HRS § 846E-2(a) outlines the process by which a Group 2 offender may seek an authoritative determination as to whether the registration scheme applies to him or her.[12]  Nevertheless, due to the attorney general's role as the administrator of Hawaii's sex offender registration system, such a request by a Group 2 offender would be governed by Hawaii's Administrative Procedure Act, see HRS Chapter 91, and the attorney general's agency rules, see Hawaiʻi Administrative Rules ("HAR") Title 5.[13]

Specifically, HRS § 91-8 permits "any interested person [to] petition an agency for a declaratory order [which is afforded the same status as other agency orders] as to the applicability of any statutory provision or of any rule or order of the agency," and HAR § 5-1-70 (effective 1993) states in relevant part:

> Petition for declaratory rulings.  (a) Any interested person may petition the department [of the attorney general] for the issuance of a declaratory order as to the applicability of any statutory provision administered by

---

[12]    Notably, the subsection provides: "A covered offender shall be eligible to petition the court in a civil proceeding for an order that the covered offender's registration requirements under this chapter be terminated, as provided in section 846E-10."  HRS § 846E-2(a).  However, this civil court procedure is not directed at an out-of-state offender who seeks a determination regarding his or her "covered offender" status.

[13]    Multiple sections within HRS Chapter 846E refer to HRS Chapter 91: HRS § 846E-2(b), (g) (2014); HRS § 846E-3(c), (d) (2014); HRS § 846E-4(e) (2014); HRS § 846E-5(b) (2014); and HRS § 846E-9(a)(12) (2014).

18

> the department or of any rule or order of the department. Petitions for the issuance of a declaratory order shall state clearly and concisely the controversy or uncertainty, shall cite the statutory authority or rule or order involved, shall include a detailed statement of all the facts and the reasons or grounds prompting the petition, together with full disclosure of the petitioner's interest, and shall conform to the requirements of section 5-1-35.

HAR § 5-1-70 (emphasis added). See Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 196–97, 159 P.3d 143, 155-56 (2007) ("[T]he declaratory ruling procedure of HRS § 91-8 is meant to provide a means of seeking a determination of whether and in what way some statute, agency rule, or order, applies to the factual situation raised by an interested person." (emphasis in original)); Fasi v. State Public Emp't Relations Bd., 60 Haw. 436, 444, 591 P.2d 113, 118 (1979) ("[HRS § 91-8] is designed to provide a means for securing from an agency its interpretation of relevant statutes, rules and orders. . . . The declaratory ruling so obtained has effect only as an order of the agency."). "Based on the plain language of [HRS § 91-8], . . . interested persons are those 'affected' by, or 'involved' with, the applicability of 'any statutory provision or of any rule or order of the agency." AlohaCare v. Ito, 126 Hawaiʻi 326, 360, 271 P.3d 621, 655 (2012) (internal citations and footnote omitted).

Accordingly, as an "interested person," a Group 2 offender may follow the procedure outlined in the attorney general's administrative rules and submit a petition to the

19

attorney general for a declaratory order regarding whether the sex offender registration requirements detailed in HRS § 846E-2 apply to him or her. If the petitioner is aggrieved by the decision, the petitioner may also appeal the declaratory order to the circuit court pursuant to HRS § 91-14. See HRS § 91-14(a) ("Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review . . . ." (emphasis added)); Lingle v. Haw. Gov't Emps. Ass'n, 107 Hawaiʻi 178, 186, 111 P.3d 587, 595 (2005) ("[W]e hold that orders disposing of petitions for declaratory rulings under HRS § 91-8 are appealable to the circuit court pursuant to HRS § 91-14."); see also AlohaCare, 126 Hawaiʻi at 342, 271 P.3d at 637 (declining to reach the issue of whether an "interested person" who petitions for a declaratory ruling under HRS § 91-8 is necessarily a "person aggrieved" pursuant to HRS § 91-14, but holding that in the given case, the petitioner was a "person aggrieved").

**C.  Doe, by Way of His May 23, 2012 E-mail and March 24, 2013 Letter, Sought to Petition the Attorney General for a Declaration as to Whether He Was Required to Register in Hawaiʻi Pursuant to HRS Chapter 846E**

In his May 23, 2012 e-mail to the Attorney General, Doe expressed his understanding that Hawaiʻi law did not require

20

him to register if he vacationed in Hawaiʻi, but he wanted to know HCJDC's opinion:

> I was convicted of a gross misdemeanor in Washington State . . . . From what I can tell there is no similar statute in Hawaii and that this may not require registration.
>
> . . . .
>
> The purpose of my request is, I and my family have in the past and would like to continue vacationing periodically in Hawaii, and I need to know what my requirements are, if actually required, for registration.

(emphasis added). Notably, Doe did not state that he intended to "establish[] or maintain[] a residence" in Hawaiʻi — the condition necessary for HRS § 846E-2(b) to apply — or otherwise referred to HRS § 846E-2(b). Nor did he use the word "termination" in his e-mail.

Instead, Doe's e-mail with the subject line, "Sex Offender Registration Petition," stated: "In reviewing Hawaii's sex offender registration laws, I understand one can petition the DOJ/AG to be exempt from registration in Hawaii based on the basis the convicted offense is not similar to a Hawaii sex offense statute. . . . Please let me know the petition process and whether [sic] you have a form for this or not." A plain reading of the entirety of Doe's request reveals that he sought to petition the Attorney General for verification that he would not be subject to Hawaii's sex offender registration laws if he "vacation[ed] periodically in Hawaiʻi." In other words, Doe sought to petition for a declaratory order, pursuant to HRS

21

§ 91-8, as to whether the sex offender registration requirements detailed in HRS § 846E-2 would apply to him in his intended travels to Hawaiʻi, i.e., whether his Washington state conviction is a "covered offense" under Hawaiʻi law.

Further underscoring this interpretation is the fact that, at the time of Doe's May 23, 2012 e-mail, HRS § 846E-2(a) (Supp. 2012) read in relevant part: "A covered offender shall register with the attorney general and comply with the provisions of this chapter for life or for a shorter period of time as provided in this chapter." In other words, the statute in effect at the time, on its face, required a covered offender to register as soon as the covered offender came within the State's jurisdiction, i.e., a covered offender's initial presence in Hawaiʻi. Accordingly, given no evident "grace period" in the requirements outlined in HRS § 846E-2(a) (Supp. 2012), it follows that Doe's inquiry was focused on whether his offense is a "covered offense" that triggers a requirement to register if he vacationed in Hawaiʻi.

The purpose of Doe's letter dated March 24, 2013 was less apparent, but nevertheless ascertainable. He captioned the letter, "Reference: Petition of Termination of Sex Offender Registration Requirements," and the only Hawaiʻi law he cited was HRS § 846E-2(b). The use of "termination" in his caption and

22

sole legal citation to HRS § 846E-2(b) is unsurprising as the petition process detailed in HCJDC's e-mail response dated June 4, 2012 was only that contained in HRS § 846E-2(b). No reference was made by HCJDC to HRS § 91-8 or HAR § 5-1-70.

The factual circumstances presented in the letter had not changed from those presented in his e-mail. That is, he: (1) reiterated that he is not a resident of Hawai'i ("Presently I am not a resident of Hawaii . . . . Even though I am not a resident . . . I request that my petition be evaluated nonetheless."); (2) asserted that he planned to "visit" Hawai'i ("[W]e are making plans for an extended visit to the islands and likely to exceed the 10 day grace period[14] triggering requirement for in person registration."); and (3) argued that his Washington state conviction is not "comparable to any existing Hawaii criminal offense" as "neither the elements of the [Washington] conviction nor the conduct pled to is comparable to a Hawaii criminal sex offense," and attached numerous Washington court documents associated with his conviction. In sum, Doe's circumstances were clearly that of a Group 2 offender, not a Group 3 offender.

---

[14] The ten-day or thirty-day-in-the-aggregate durational condition was not yet codified at the time of Doe's letter. However, HCJDC's June 4, 2012 e-mail communicated the "grace period" to Doe. See also supra 3 & note 2.

23

That Doe wrote in his letter that he was "petition[ing] [for] termination of sex offender registration requirements per Hawaii statute Section 846E-2(b)," is not dispositive of how his pro se letter should have been handled by the attorney general, the receiving agency. The case, Dupree v. Hiraga, 121 Hawaiʻi 297, 219 P.3d 1084 (2009), is instructive.

In Dupree, the Clerk of the County of Maui ("Clerk"), received several letters challenging the residency of Solomon P. Kahoʻohalahala, a candidate for the Lānaʻi seat on the Maui County Council ("Candidate"). One of letters was submitted by Lānaʻi resident, Michael D. Dupree ("Dupree"), who stated that the Candidate "should 'run in the district that he currently resides in and give a current Lanai resident the opportunity to represent their home island.'" Dupree, 121 Hawaiʻi at 302, 219 P.3d at 1089. In his issued ruling on the collective complaint letters, the Clerk concluded that the Candidate's "'residence address of record has always been on Lanai.' . . . [T]o the extent that the Complaint Letters constitute a challenge to [the Candidate's] right to remain a registered voter in []Lanai[] . . . , the challenge is not sustained." Dupree, 121 Hawaiʻi at 304, 219 P.3d at 1091.

The Board of Registration ("Board") subsequently received a pro se appeal letter from Dupree, which was

24

characterized by the Board chair as a "'challenge to [the Candidate's] right to remain a registered voter on Lanai.'" 121 Hawai'i at 306, 219 P.3d at 1093. After holding a hearing, the Board sustained Dupree's appeal and overruled the Clerk's decision, holding that "[f]or purposes of this 2008 election, [the Candidate] is a resident of Lahaina, Maui." 121 Hawai'i at 310, 219 P.3d at 1097. On appeal to this court, the Candidate argued that the Board had lacked jurisdiction to hear Dupree's appeal because Dupree's initial letter to the Clerk challenged the Candidate's candidacy, not his voter registration status. Id. at 311, 219 P.3d at 1098.

In holding that the Board had jurisdiction to consider Dupree's appeal, this court observed that Dupree had proceeded pro se when he submitted his initial letter to the Clerk, and that "[p]leadings prepared by pro se litigants should be interpreted liberally." 121 Hawai'i at 314, 219 P.3d at 1101 (citing Giuliani v. Chuck, 1 Haw. App. 379, 385–86, 620 P.2d 733, 737–38 (1980)). Accordingly, the Clerk "acted within the scope of his authority in construing [Dupree's] letter[] as a challenge to [the Candidate]'s residency . . . and investigating on that basis. . . . The Board therefore . . . had jurisdiction to hear Dupree's appeal from that aspect of [the Clerk]'s

decision." 121 Hawaiʻi at 315, 219 P.3d at 1102 (footnote

omitted). Specifically, this Court observed:

> [Although] Dupree's letter focused on [the Candidate]'s
> residency for the purpose of challenging his eligibility as
> a candidate from Lānaʻi, rather than his right to vote on
> Lānaʻi[,] . . . that does not mean that [the Clerk] was
> required to ignore Dupree's factual allegations insofar as
> they cast doubt on the legitimacy of [the Candidate]'s
> voter registration on Lānaʻi.

121 Hawaiʻi at 313, 219 P.3d at 1100.

This reasoning applies to Doe's case. The facts

alleged in Doe's letter dated March 24, 2013 indicate that he

was not a Group 3 offender seeking to terminate registration

requirements, but rather a Group 2 offender seeking a

declaration from the attorney general, pursuant to HRS § 91-8,

that the registration requirements of HRS § 846E-2(a) would not

apply to him if he were to vacation in Hawaiʻi for longer than

ten days. That Doe, proceeding pro se, mis-cited the

appropriate subsection of the HRS or used the term "termination"

with respect to registration requirements, does not preclude a

liberal construction of his letter. Indeed, when viewed

together with Doe's initial e-mail, Doe's request as a Group 2

offender is plain. Moreover, the attorney general's office is

an agency that is familiar with the operation of Hawaiʻi law, and

would be particularly adept at liberally construing a pro se

letter as an HRS § 91-8 petition request. Thus, for the

26

foregoing reasons, the Attorney General could ascertain the true nature of Doe's request.

Arguably, Dupree can be distinguished on grounds that an election clerk has a statutory duty, pursuant to HRS § 11-25(a) (2009) and HRS § 12-8(d) (2009), to expeditiously investigate posed challenges and objections.  Thus, liberally construing a complaint letter is not only within the scope of the clerk's authority, but encouraged under the law.  In contrast, an agency retains the discretion whether to respond to an HRS § 91-8 petition, see Citizens, 114 Hawai'i at 194, 159 P.3d at 153; therefore, conceivably, a petition that may be liberally construed as one brought pursuant to HRS § 91-8 need not be so construed by an agency such as the attorney general's office.  Such reasoning, however, ignores a fundamental tenet of Hawai'i law — that "[p]leadings prepared by pro se litigants should be interpreted liberally."  Dupree, 121 Hawai'i at 314, 219 P.3d at 1101 (citation omitted).  Doe's letter to the appropriate agency unequivocally and timely sought to initiate administrative proceedings provided for by statute.  Accordingly, his letter, too, should have been construed liberally.  See id. ("[P]leadings in administrative proceedings are to be construed liberally rather than technically." (citing

Perry v. Planning Comm'n, 62 Haw. 666, 685–86, 619 P.2d 95, 108 (1980))).[15]

**D. HCJDC's April 10, 2013 Letter Demonstrates That It Construed Doe's Letter as a Petition Pursuant to HRS § 846E-2(a)**

HCJDC's initial response to Doe's letter states in relevant part:

> We are responding to your letter on behalf of the Attorney General, State of Hawaii, as the Hawaii Criminal Justice Data Center is responsible for the maintenance of covered offender records in the State of Hawaii.
>
> In regards to whether your Washington State conviction of Communication with a Minor for Immoral Purposes is a covered offense requiring registration in Hawaii, Chapter 846E-2, Hawaii Revised Statutes (HRS) requires you to register in this state before any determination can be made. Your petition for termination of registration requirements is premature as there has been no determination of whether you are required to register as a covered offender, and you have not complied with the requirements pursuant to Chapter 846E-10, HRS, for termination.
>
> As such, you will be required to register in Hawaii should you remain in this state for more than ten days or for an aggregate period exceeding thirty days in one calendar year. . . .

According to this response, it appears that HCJDC properly construed Doe's letter as a "petition for termination of registration requirements" pursuant to subsection (a), not subsection (b), of HRS § 846E-2. This is made apparent by the following portions of its response:

(1) "In regards to whether your Washington State conviction of Communication with a Minor for Immoral Purposes is a covered offense requiring registration in Hawaii . . . ." The key issue

---

[15] This opinion is not intended to limit agencies' authority to reasonably request relevant information from a petitioner.

28

identified by HCJDC was whether Doe's Washington state offense is a "covered offense";

(2) "Your petition for termination of registration requirements is premature as there has been no determination of whether you are required to register as a covered offender, and you have not complied with the requirements pursuant to Chapter 846E-10, HRS, for termination."  The two reasons given by HCJDC as to why Doe's request was "premature" — that there was yet no determination of whether Doe is required to register as a covered offender, and that Doe failed to follow the termination procedures provided in HRS § 846E-10, a reference to which is contained only in HRS § 846E-2(a) — fall solely under subsection (a), not subsection (b), of HRS § 846E-2; and

(3) "[Y]ou will be required to register in Hawaii should you remain in this state for more than ten days or for an aggregate period exceeding thirty days in one calendar year."  HCJDC based its conclusion on the duration condition[16] and not

---

[16]    The duration condition was not codified as part of HRS § 846E-2(a) until April 30, 2013.  See supra note 2.  However, at the time it sent its letter to Doe, HCJDC was already aware of the possible law change to subsection (a) as the Attorney General had submitted written testimony on behalf of the underlying bill when it was initially introduced, observing:

> Section 846E-2(a), HRS, is being amended to clarify the basic registration requirement, and make it clear that covered offenders, whether or not residents of this State, who remain in the State for more than ten days or for an aggregate period exceeding thirty days in one calendar year, must register with the Attorney General.

AG Testimony at 3.  Moreover, by April 10, 2013, the date of HCJDC's response

(continued . . .)

29

the "establish[ment] or maint[enance] [of] a residence in [Hawaiʻi]."

Indeed, nothing in HCJDC's letter indicates that it construed Doe's letter as anything but a request by a Group 2 offender as to whether his Washington state offense is a "covered offense requiring registration in Hawaii."

As discussed supra Part IV.B., determining whether a Group 2 offender's out-of-state offense is a "covered offense" is a condition precedent for that offender to be required to register in Hawaiʻi. Accordingly, HCJDC's assertion that Doe "will be required to register in Hawaii should [he] remain in this state for more than ten days or for an aggregate period exceeding thirty days in one calendar year," without first determining whether his offense is a "covered offense," is an inaccurate application of the law.

**E.   HCJDC's May 16, 2013 "Modification" Letter Conflates Subsections (a) and (b) of HRS § 846E-2**

As an initial matter, HCJDC's May 16, 2013 letter issued after Doe filed his Notice of Appeal on May 6, 2013, yet was submitted to the circuit court as part of the certified

---

(. . . continued)
letter, the pending bill containing the duration condition, SB1016 SD1 HD2, had already passed a third reading in the form that it was eventually enacted. See Hawaii State Legislature, "2013 Archives, SB1016 SD1 HD2," http://www.capitol.hawaii.gov/Archives/measure_indiv_Archives.aspx?billtype=SB&billnumber=1016&year=2013.

record on appeal.  However, as Doe raised no objections to the letter's inclusion, we proceed to examine the letter.

The May 16, 2013 letter "modified" HCJDC's April 10 response, stating the following:

> Your Notice of Appeal to the Circuit Court filed on May 6, 2013 has caused my office to review the April 10, 2013 response that was sent to you.  That response inadequately conveyed the Department of Attorney General's response and we use this opportunity to modify the response as follows.
>
> Your March 24, 2013 "Petition," which was received on April 1, 2013, sought termination of sex offender registration requirements pursuant to Hawaii Revised Statutes (HRS) section 846E-2(b), for a June 23, 2011 conviction on two counts of "Communication with a Minor for Immoral Purposes."
>
> [quotation of HRS § 846E-2(b) omitted]
>
> Therefore, because you were convicted and required to register in the State of Washington, under the above-referenced statute [HRS § 846E-2(b)], if you reside in Hawaii for more than ten days or for an aggregate period exceeding thirty days in one calendar year, you are required to register.  Registration is a prerequisite to your filing of a petition for termination of registration requirement [sic].

(footnote omitted).  In sum, HCJDC re-characterized Doe's letter from a petition brought pursuant to subsection (a), to one brought pursuant to subsection (b), of HRS § 846E-2.  Further, despite the Notice's clear reference to HRS § 91-8, HCJDC declined to address it.

Even with this "modification," however, HCJDC's position continued to lack clarity.  Notably, HCJDC's conclusion conflated subsections (a) and (b) when discussing the registration requirements of subsection (b).  Specifically,

31

HCJDC stated: "[B]ecause you were convicted and required to register in the State of Washington, under the above-referenced statute [HRS § 846E-2(b)], if you <u>reside</u> in Hawaii for more than ten days or for an aggregate period exceeding thirty days in one calendar year, you are required to register" (emphasis added). In other words, HCJDC did not refer to subsection (b)'s condition that registration under it is required for "[an out-of-state offender] who establishes or maintains a residence in [Hawaiʻi]," but rather, HCJDC supplanted the word "remains" in subsection (a)'s duration condition with "reside" and presented that as subsection (b)'s condition. It is inexplicable why HCJDC referred to the duration condition of subsection (a) to define the residence requirement of subsection (b).

Additionally, HCJDC's fusion of the two subsections is problematic, particularly here, where its communication was directed to a pro se petitioner who wished to "visit" Hawaiʻi for longer than ten days, and who was seeking a declaration regarding the law's application to him. As discussed <u>supra</u> Part IV.A., with respect to out-of-state offenders, the registration requirements outlined in subsections (a) and (b) do not simultaneously apply. Specifically, Hawaii's registration scheme simply does not reach either Group 1 offenders or Group 2 offenders whose offenses are not "covered offenses": subsection

(a) applies to Group 2 offenders whose offenses are "covered offenses"; and subsection (b) applies to Group 3 offenders.

**F.   The ICA Erred in Affirming the Circuit Court's Dismissal of Doe's Notice of Appeal for Lack of Jurisdiction**

Both the ICA and the circuit court concluded that the circuit court lacked jurisdiction to hear Doe's appeal because the written communications between Doe and HCJDC did not constitute a contested case.  Use of the "contested case" analytical framework misses the mark because appeals of agency responses to petitions by aggrieved persons for declaratory orders pursuant to HRS § 91-8 are appealable pursuant to HRS § 91-14.  See AlohaCare, 126 Haw. at 342, 271 P.3d at 637 ("This court has recognized that judicial review of orders disposing of petitions for declaratory rulings pursuant to HRS § 91–8 are also subject to judicial review, although those orders may not result from contested cases." (citation omitted)); see also Part IV.B. (cases cited).  The threshold issue, then, is whether Doe's letter should have been construed as a petition for a declaratory order pursuant to HRS § 91-8 (and hence, HCJDC's response construed as one pursuant to HRS § 91-8) instead of a petition for termination of registration requirements under HRS § 846E-2(b).  If so, the circuit court would not have lacked the jurisdiction to hear Doe's appeal, but instead would have had the authority to consider the merits of his question — whether

33

he is a "covered offender" that must register if he were to remain in Hawaiʻi for longer than the duration condition.

As discussed supra Part IV.C., Doe's letter should be liberally construed as an HRS § 91-8 petition regarding the applicability of HRS § 846E-2(a), given the factual circumstances asserted by him in his letter and that he had proceeded pro se. See Dupree, 121 Hawaiʻi at 314, 219 P.3d at 1101 (citation omitted). Given that Doe reiterated that he wished merely to "visit" or "vacation" in Hawaiʻi, it was plain that Doe cited to the incorrect subsection for his petition, as HRS § 846E-2(b) only applies to offenders who "establish[] or maintain[] a residence in [Hawaiʻi]."

Further, as discussed supra Part IV.D., despite Doe's incorrect citation to HRS § 846E-2(b), it appears HCJDC nevertheless initially construed Doe's letter as a petition brought with respect to HRS § 846E-2(a), as the statutory provisions cited or quoted by HCJDC all point to subsection (a). As noted by the Attorney General at oral argument before the circuit court, subsection (a) provides an express procedure for registered covered offenders to engage in a civil proceeding to terminate requirements pursuant to HRS § 846E-10. At no time had Doe requested this kind of proceeding. See supra note 12. But it is precisely because the circumstances laid out in Doe's

34

letter do not involve HRS § 846E-10 or an existing registration, that the only reasonable construction of Doe's letter is as a petition brought pursuant to HRS § 91-8, inquiring whether he is a "covered offender" required to register pursuant to HRS § 846E-2(a) if he visited Hawaiʻi for longer than ten days.

For the foregoing reasons, a reasonable interpretation of HCJDC's initial letter is as a denial of Doe's petition for a declaratory order. The Attorney General had argued before the ICA that Doe's letter did not amount to a HRS § 91-8 petition because the letter cited to subsection (b) and used the word "termination," and therefore did not comply with the attorney general's administrative rules. These rules require, in relevant part, that "petition[s] for declaratory rulings":

> [(1)] state clearly and concisely the controversy or uncertainty, [(2)] . . . cite the statutory authority or rule or order involved, [and (3)] . . . include a detailed statement of all the facts and the reasons or grounds prompting the petition, together with full disclosure of the petitioner's interest . . . .

HAR § 5-1-70(a).

Yet, for the reasons discussed in Parts IV.C.-D., Doe's letter would suffice when a liberal construction is afforded, based on the factual circumstances advanced by Doe, a pro se petitioner. Moreover, HCJDC had issued a "modification" letter — which is part of the instant record on appeal — after Doe filed the Notice. Yet, the "modification" letter wholly

35

ignores Doe's repeated references to HRS § 91-8 within the Notice, which should have crystallized what Doe sought.

In any event, even if Doe's letter is construed to be flawed, that the attorney general may "summarily dismiss a petition for a declaratory order if the petition does not meet the requirements of this section," HAR § 5-1-70(a), does not change the nature of Doe's letter <u>as a petition</u>, regarding which a decision was made by the Attorney General, thus affording him the right to appeal that decision to circuit court pursuant to HRS § 91-14, if aggrieved.

Notably, before the circuit court, Doe discussed Hawaii's sex offender registration scheme and whether his out-of-state offense was one that placed him within that scheme. Doe emphasized:

> Your Honor, . . . if you take Section 2(b) out, which refers to out-of-state convictions, the rest of the statute refers to covered -- defines a covered offense as one that would be a sexual offense in this state. Taking Section 2(b) out, if you committed the offense out of the state that would be a sexual offense in this state, then the rest of the chapter applies to you. That determination has not been made.
>
> . . . .
>
> The prerequisite requirement -- the legislature's intent was clear. If your offense is not a registrable offense in this state based on not being equivalent, defined under Section 1, then you should not -- you're not required to register.

Thus, despite proceeding pro se, Doe clarified that if HRS § 846E-2(b) did not apply to an out-of-state offender, e.g., he or she has not "establish[ed] or maintain[ed] a residence in

36

[Hawaiʻi]," HRS § 846E-2(b), then the offender need only register in Hawaiʻi if his or her out-of-state offense is a "covered offense" in this State; and that this determination must be made before registration is imposed. Thus, although the word "termination" was readily used at oral argument by the circuit court and the parties, it is evident that Doe's dispute concerned his request to the Attorney General for a determination as to "whether or not . . . [he, as a Group 2 offender, is] a covered offender." The review of this agency determination squarely falls within the circuit court's jurisdiction.

**G. The Attorney General's Apparent Position That It Cannot Determine Whether Out-of-State Offenders Are "Covered Offenders" until after They Arrive in Hawaiʻi and Initially Register, Is Untenable**

Lastly, we note that the Attorney General appears to take the position that whether an out-of-state offender is a "covered offender" cannot be determined until that person "physically arrives in the State and initially registers, including providing his [or her] fingerprints to verify his [or her] identity," as "the Attorney General lacks the statutory authority to deem someone 'not a covered offender' prior to registration." (emphasis omitted). Specifically, with respect to Doe, the Attorney General's stated position was:

37

> If [Doe] is found not to be a "covered offender," then [he] will not have to <u>continue</u> to register <u>under subsection (a)</u>.
>
> . . . .
>
> [A]fter [HCJDC] verifies [Doe]'s identity and physical presence in the state, [HCJDC] can then request certified documents from Washington confirming [Doe]'s convictions, run a full criminal history check in state and federal databases, and issue a determination as to whether [Doe] is indeed a "covered offender."

(emphasis added).  This suggests that Doe and other Group 2 offenders — those who do not establish or maintain a residence in Hawaiʻi but who wish to visit Hawaiʻi for more than ten days or for an aggregate period greater than thirty days in a calendar year — are effectively treated like Group 3 offenders despite the legislature's intent to treat the two groups as distinct.[17]

To the extent there is any confusion regarding the law, it is important to clarify Hawaii's sex offender registration scheme.  By way of HRS § 91-8, the legislature intended to foster self-compliance with all agency-administered statutes, such as HRS § 846E-2.  Moreover, as a practical matter, the sex offender registration scheme relies heavily on self-reporting.  Requiring Group 2 offenders to register before they can determine whether an out-of-state offense is a "covered offense"[18] in Hawaiʻi effectively deters voluntary self-reporting.

---

[17]    As such, any possible conflict between HRS § 846E-2(b) and HRS § 91-8, as suggested by the Attorney General before the lower courts, does not affect the court's consideration here.

[18]    Notably, the Attorney General concedes that whether Doe is a "covered offender" is a question of law.

38

Accordingly, advanced inquiries by out-of-state Group 2 offenders should be encouraged.

## V. Conclusion

For the foregoing reasons, we vacate the ICA's affirmance of the circuit court's dismissal of Doe's agency appeal based on a lack of jurisdiction, and remand this case to the Attorney General so that Doe's petition can be addressed consistent with this opinion.


John Doe,                           /s/ Mark E. Recktenwald
petitioner pro se
                                    /s/ Paula A. Nakayama
Marissa Luning,
for respondent                      /s/ Sabrina S. McKenna



                                    /s/ Richard W. Pollack

                                    /s/ Michael D. Wilson